UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DAVIS WINSTON,** *on behalf of himself and all others similarly situated,* | CASE NO. |
| Plaintiff, | JUDGE |
| v. | |
| **CUYAHOGA METROPOLITAN HOUSING AUTHORITY** c/o Jeffrey K. Patterson, CEO 8120 Kinsman Rd. Cleveland, OH 44104 | **CLASS ACTION COMPLAINT** **Demand for Jury Trial on all issues triable of right by a jury, pursuant to Fed. R. Civ. P. 38.** |
| Defendant. | |

## I.  PRELIMINARY STATEMENT

1. Plaintiff Davis Winston brings this action seeking declaratory and monetary relief against Defendant Cuyahoga Metropolitan Housing Authority ("CMHA") for its policy and practice of not treating the month-to-month fees and the short-term lease fees of landlords as part of the contract rent under the CMHA Housing Choice Voucher Program ("HCVP").  As a result of this policy, CMHA has denied Winston and similarly situated plaintiffs a portion of their respective HCVP rent subsidy benefits in violation of their rights under 42 U.S.C. § 1437f(o) and 24 C.F.R §§ 982.501-982.521.

2. The HCVP is a federally-funded rent subsidy program for very low income families and individuals.  HCVP participants lease existing private rental units and a local public housing agency ("PHA"), such as CMHA, pays the landlord on behalf of the participants to

afford decent, safe, and sanitary rental housing. 24 C.F.R. § 982.1.

3. Plaintiff brings his claim for declaratory and monetary relief pursuant to 42 U.S.C. § 1983.

## II.    JURISDICTION AND VENUE

1. This Court has original jurisdiction in this action under 28 U.S.C. § 1331 because Plaintiff asserts claims against the Defendant under the laws of the United States.

2. This Court has original jurisdiction in this action under 28 U.S.C. § 1343(a)(3) because the Plaintiff asserts claims against the Defendant to redress deprivations under color of state law of rights and privileges secured by Acts of Congress providing for equal rights of citizens.

3. This Court has original jurisdiction in this action under 28 U.S.C. § 1343(a)(4) because Plaintiff asserts claims against Defendant to recover damages and to secure equitable relief under an Act of Congress providing for the protection of civil rights.

4. This Court is authorized to grant declaratory relief in this action under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

5. Venue lies properly in this district pursuant to 28 U.S.C. § 1391. The Northern District of Ohio is the judicial district in which: (i) all of the actions and omissions that give rise to Plaintiff's claims occurred, (ii) CMHA's principal place of business is located, and (iii) CMHA conducts its business.

## III.    THE PARTIES

6. Plaintiff is an adult individual and citizen of the United States who resides in Cleveland, Ohio.

7. At all times pertinent hereto, Plaintiff has been a participant in the CMHA HCVP.

8. Defendant CMHA is a body corporate and politic organized and existing under the laws of the State of Ohio, Ohio Rev. Code Chapter 3735. CMHA has headquarters located at 8120 Kinsman Rd., Cleveland, Ohio 44104. Under the laws of the State of Ohio, CMHA has the authority and duty to administer in Cuyahoga County, Ohio, housing programs for low-income families and individuals. Pursuant to that authority and duty, CMHA administers the HCVP in Cuyahoga County. CMHA has been and continues to be acting under color of state law in all of its actions and omissions concerning the allegations in this Complaint.

9. With respect to each allegation in this Complaint concerning an action or failure to act of CMHA (or any other CMHA official, employee, or agent), CMHA (or the other CMHA official, employee, or agent) acted or failed to act pursuant to a CMHA policy or custom and/or pursuant to a decision of the person who has final decision-making authority for CMHA relative to the particular action nor failure to act. The relevant CMHA policies are set forth in the CMHA Administrative Plan for the HCVP, and other CMHA documents.

## IV.  FACTUAL ALLEGATIONS

10. Under Section 8 of the United States Housing Act of 1937, Congress has enacted a variety of programs to promote the goal of providing an adequate supply of decent and affordable housing for low-income individuals and families. 42 U.S.C. § 1437f(a). The U.S. Department of Housing and Urban Development ("HUD") provides funding for the Section 8 programs, which are administered either directly by HUD or through state or local housing agencies known as PHAs. One of these programs is the HCVP. 42 U.S.C. § 1437f(o).

11. Under the HCVP, HUD enters into annual contributions contracts ("ACCs") with PHAs under which: (i) HUD agrees to make payments to PHAs to cover the housing assistance payments that PHAs make to private landlords on behalf of individuals and families who

participate in the HCVP, and (ii) PHAs agree to administer the HCVP in accordance with HUD regulations and requirements. 24 C.F.R. § 982.151(a).

12. CMHA is a PHA and, at all times relevant to this action, HUD and CMHA have been parties to an ACC pursuant to which CMHA has administered the HCVP.

13. The PHA receives applications from the persons who seek to participate in the HCVP, and the PHA determines their eligibility for participation in the HCVP. 24 C.F.R. §§ 982.201-982.207.

14. When a PHA selects an individual or family to participate in the HCVP, the HCVP participant is responsible for finding an existing rental unit in the private market that the participant desires to lease, that meets the requirements of the HCVP, and the owner of which is willing to lease to the individual or family and participate in the HCVP. 24 C.F.R. §§ 982.302, 982.305. When the HCVP participant finds a prospective rental unit, a request for tenancy approval is submitted to the PHA. 24 C.F.R. § 982.302.

15. Upon receiving a request for tenancy approval under the HCVP, the PHA determines whether the HCVP requirements are met with respect to, among other things, the rent reasonableness of the contract rent, the housing quality of the rental unit, and other terms of the lease. 24 C.F.R. § 982.305. The contract rent must be reasonable in relation to rents being charged for comparable unassisted units. 24 C.F.R. § 982.507.

16. After the PHA approves a HCVP tenancy, the PHA and the owner execute a housing assistance payments contract ("HAP contract") with respect to the tenancy. 24 C.F.R. § 982.1(b)(2). Under the HAP contract, the PHA makes the housing assistance payments to the owner on behalf of the tenant. 24 C.F.R. §§ 982.1(b)(2), 982.451.

17. For its computations of the amount of the HCVP rent subsidy, the PHA

establishes a payment standard, which is a fixed-dollar amount, per bedroom size, generally between 90% and 110% of HUD's Fair Market Rent for the area. 42 U.S.C. § 1437f(o)(1)(B); 24 C.F.R. § 982.503.

18. For fiscal year 2016, the CMHA payment standard is: 0 bedrooms ("BR") - $570; 1 BR - $673; 2 BR - $783; 3 BR - $1,026; 4 BR - $1,155; 5 BR - $1,327; and 6 BR - $1,501.

19. If the contract rent under the HCVP lease does not exceed the payment standards, the HCVP participant is generally required to pay 30% of the household's income for rent and utilities. 42 U.S.C. § 1437f(o)(2)(B); 24 C.F.R. § 982.505.

20. For a HCVP participant's initial occupancy of a dwelling unit under a HCVP lease, if the contract rent exceeds the payment standard, the HCVP participant's obligation for rent and utilities (defined as "family share" in 24 C.F.R. § 982.4) may not exceed 40% of the household's income. 42 U.S.C. § 1437f(o)(3); 24 C.F.R. § 982.508.

21. If the HCVP lease requires the tenant to pay for one or more utility services (other than telephone service), the HCVP participant receives a utility allowance, which is based on the typical cost of utilities paid by energy-conservative households that occupy housing of similar size and type in the same locality. 24 C.F.R. § 982.517.

22. When a HCVP participant receives a utility allowance, the amount of the utility allowance is deducted from the amount of the participant's obligation for rent and utilities. If the amount of the utility allowance exceeds the HCVP participant's obligation for rent and utilities, the PHA makes a monthly utility reimbursement payment to the participant in the amount that the utility allowance exceeds the participant's obligation for rent and utilities.

23. In the HCVP, the contract rent is the "rent to owner" (see 24 C.F.R. § 982.4) if the landlord pays for all of the utilities, and is the "gross rent" (see 24 C.F.R. § 982.4) if the tenant

pays for one or more of the utilities. Gross rent is the sum of the rent to owner and the utility allowance. In either case, based on the definition of rent to owner, the contract rent includes "the total monthly rent payment to the owner under the lease for the unit" and the "payments for any housing services, maintenance, and utilities that the owner is required to provide and pay for." 24 C.F.R. § 982.4 (definition of "rent to owner").

24. Under the HCVP and under Ohio law, the term "rent" means an amount paid as consideration for the use or occupancy of real property.

25. The PHA may terminate a Tenant's participation in the HCVP only for cause. The only permissible causes for termination are the grounds – the Tenant's actions or failure to act – that are set forth in 24 C.F.R. §§ 982.552, 982.553, which include any violation of the Tenant obligations that are set forth in 24 C.F.R. § 982.551.

26. HCVP participants are entitled to an opportunity for an informal hearing, and written notice of the hearing opportunity, whenever a PHA proposes to terminate the Tenant's participation in the HCVP because of the Tenant's action or failure to act. 24 C.F.R. §§ 982.555(a)(1)(v), 982.555(c)(2). The PHA must provide the HCVP participants with this hearing opportunity before the PHA terminates the housing assistance payments that it makes on behalf of the Tenant. 24 C.F.R. § 982.555(a)(2).

27. In Cuyahoga County, Ohio, because of the extreme shortage of affordable housing for low-income individuals and families, and because the demand for rent subsidies far exceeds supply, participation in the HCVP is a highly valued benefit among low-income individuals and families.

28. For part of the time relevant to this action K&D Management, LLC ("K&D") has owned the rental property known as Parkside Gardens located in Euclid, Ohio. At some point

between January 2013 and September 2015, ownership of this property was transferred to ROCO-Parkside, LLC.

29. At all times relevant to this action, with respect to Parkside Gardens, the policy and practice has been to permit tenants to select a lease term. If a tenant selects a month-to-month lease term, the owner of Parkside Gardens requires that the tenant pay monthly a specified amount that is designated in the lease as rent and to pay monthly a specified amount that is designated in the lease as an applicable month-to-month fee. If tenants select a one-year lease term, Parkside Gardens requires the tenant to pay monthly a specified amount that is designated in the lease as rent, and does not require the tenant to pay the month-to-month fee. The amount designated in the lease as rent, if the tenant selects the month-to-month lease term, is the same amount as the amount designated in the lease as rent, if the tenant selects the one-year lease term. The month-to-month fee is contained in the lease, if the tenant selects the month-to-month lease term, solely because the tenant has selected a month-to-month lease option.

30. At all times relevant to this action, with respect to Parkside Gardens, the policy and practice of the owner of Parkside Gardens has been to include in the leases of Parkside Gardens tenants a provision that states that, if the tenant remains in possession of the dwelling unit after the expiration of a lease term and a new lease has not been executed, the tenant is subject to a month-to-month fee, as described in paragraph 29 above.

31. At all times relevant to this action, the practice of CMHA has been not to treat the month-to-month fees and the short-term lease fees of landlords as part of the contract rent under the HCVP. Under this practice, CMHA has not treated the month-to-month fees and the short-term lease fees as part of the contract rent: when CMHA has computed the amount of the HCVP rent subsidies that CMHA has paid on behalf of HCVP participants; when CMHA has computed

the amount of the utility reimbursement payments that CMHA has paid to HCVP participants; when CMHA has determined the reasonableness of the contract rents in a HCVP lease; or when CMHA has applied its procedures for increases in contracts rents. Under this practice, CMHA has required the HCVP participants to pay the full amount of the month-to-month fees and the short-term lease fees, independent of their HCVP rent subsidy benefits.

32. On or about January 21, 2013, and with the approval of CMHA, Plaintiff Winston entered into a HCVP lease for a unit at Parkside Gardens in Euclid, Ohio (the "Winston Lease").

33. The initial term of the Winston Lease was one year, commencing January 16, 2013 and ending on January 31, 2014. For the initial one-year term of the Winston lease, the lease designated as rent the amount of $541 per month. The Winston Lease also contained an automatic renewal for a month-to-month lease term.

34. Under the Winston Lease, Plaintiff was required to pay for all of the utility services for the rental units, except gas, water and sewer services.

35. In January 2013, CMHA and K&D entered into a HAP Contract ("Winston HAP Contract) under which CMHA was obligated to make HCVP rent subsidy payments to the owner of Parkside Gardens, on behalf of Winston, in connection with the Winston Lease. The Winston HAP Contract remained in effect during the entire period that Winston occupied the rental unit in Parkside Gardens under the Winston Lease. During the entire period that Winston occupied the unit, Winston was a HCVP tenant. Either K&D or ROCO-Parkside LLC were his landlord under the Winston Lease.

36. Upon the expiration of the initial term of the Winston Lease, Winston elected not to execute a new lease for his occupancy of the Winston rental unit, and the Winston lease was renewed on a month-to-month lease term pursuant to the automatic lease renewal provision.

37. From February 1, 2014 until on or about October 31, 2015 Winston resided at the Parkside Gardens rental unit pursuant to a month-to-month lease term.

38. Pursuant to the Winston Lease and the K&D month-to-month fee policy, from February 2014 through October 2015, K&D assessed Winston the amount of $541 per month and $100 per month as the month-to-month fee.

39. By virtue of its approval of the Winston Lease and its knowledge that Mr. Winston did not leave the premises at Euclid Gardens when the original term of the Lease ended in January of 2014, CMHA necessarily knew that Mr. Winston was leasing on a month-to-month basis and that the month-to-month fees imposed by the Lease were in effect.

40. Pursuant to the CMHA practice for month-to-month fees, CMHA did not treat the Winston month-to-month fees as part of the contract rent under the Winston Lease for any purpose, including when it computed the amount of the HCVP Rent subsidy payments that CMHA made on behalf of Winston under the Winston HAP contracts.

41. If the policy and practice of CMHA had been to treat the month-to-month fees of landlords, including the Winston month-to-month fees, as part of the contract rent, the amount of the HCVP rent subsidy payment that CMHA made on behalf of Winston under the HAP contracts, and/or the amount of the utility reimbursement payments that CMHA made to Winston in connection with the Winston Lease, would have been a higher amount than the amount that CMHA paid.

42. Under the HCVP and Ohio law, the Winston month-to-month fees are part of the contract rent under the Winston Lease.

43. Plaintiff Winston paid the full amount of the month-to-month fees from February 2014 through October 2015.

44. CMHA's failure to treat the month-to-month fees as part of the contract rent caused Winston to suffer significant financial hardship.

## V. CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action individually and as a class action for CMHA's violation of 42 U.S.C. § 1437f(o), 42 U.S.C. § 1983, and 24 C.F.R. 982.501-982.521, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following Class:

> All participants in the CMHA HCVP who were approved for a HCVP tenancy for which the property owner executed a HAP contract with CMHA and who paid month-to-month and/or short-term lease fees, pursuant to a reference to such fees in their lease, independent of their HCVP rent subsidy benefits within two (2) years of the filing of this action and through final judgment.

46. This Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to CMHA, Plaintiff avers upon information and belief that the class numbers in the hundreds.

47. There are questions of law and fact common to the Class that pre-dominate over any questions affecting only individual Class member, as CMHA uses common practices in committing conduct that Plaintiff alleges damaged him and the class members. These questions include:

- Whether Defendant should have considered the month-to-month and short-term fees paid by Plaintiff and the other class members as part of their rent;

- Whether Defendant violated 42 U.S.C. § 1437f(o) by failing to include Plaintiff and the other class members' month-to-month and short-term fees as part of the contract rent;

- Whether Defendant violated 24 C.F.R. §§ 982.501-982.521 by failing to include Plaintiff and the other class members' month-to-month and short-term fees as part of the contract rent;

- Whether Defendant improperly calculated Plaintiff and the other class

members' voucher amounts by failing to include month-to-month and short-term fees as a part of the contract rent.

48. Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

49. Plaintiff will fairly and adequately protect the interest of the Class. Plaintiff is committed to vigorously litigate this matter. Plaintiff has secured counsel experienced in handling civil litigation, including class claims. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue these claims.

50. This action should be maintained as a class action because the prosecution of separate actions by individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interest of other members not parties to the adjudications or substantially impair of impede their ability to protect their interests.

51. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against CMHA is small. Management of the class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the class members may be obtained from CMHA's records.

### FIRST CAUSE OF ACTION
**Violation of the U.S. Housing Act of 1937 – 42 U.S.C. §§ 1437f, 1983**
**(Against Defendant CMHA)**

52. Plaintiff incorporates the foregoing paragraphs as though the same were set forth herein.

53. Defendant CMHA violated Plaintiff's and the other class members' rights under

42 U.S.C. § 1437 *et seq.* and 24 C.F.R. §§ 982.501-982.521 by failing to include their month-to-month fees and/or short-term fees as a part of the contract rent under the HCVP.

54. As a direct and proximate result of Defendant CMHA's violation of these rights, Plaintiff and the other class members have suffered economic damages.

55. Defendant CMHA is liable to Plaintiff and the other class members under 42 U.S.C. § 1983 for the deprivation of their rights.

## VI. PRAYER FOR RELIEF

56. **WHEREFORE**, Plaintiff seeks the following relief in favor of himself and the Class:

(a) That an order be entered certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class;

(b) That an order be entered finding and declaring that Defendant has violated the rights of Plaintiff as alleged in this Complaint;

(c) Award compensatory damages to Plaintiff and against Defendant pursuant to 42 U.S.C. § 1983, in an amount to be proven at trial;

(d) Award to Plaintiff the costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

(e) That the Court grant such other and further relief as may be just and proper.

Respectfully submitted,
**COHEN ROSENTHAL & KRAMER LLP**

/s/ Ellen M. Kramer
Ellen M. Kramer (0055552)
emk@crklaw.com
Joshua R. Cohen (0032368)
jcohen@crklaw.com
Joshua B. Fuchs (0087066)
jfuchs@crklaw.com
The Hoyt Block Building – Suite 400
700 West St. Clair Avenue
Cleveland, Ohio 44113
216-781-7956 [Telephone]
216-781-8061 [Facsimile]

Counsel for Plaintiff

## JURY DEMAND

Plaintiff demands a trial by jury on all eligible claims and issues.

/s/ Ellen M. Kramer
One of the Attorneys for Plaintiff