UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVIS WINSTON, on behalf of himself and all others similarly situated, | ) ) ) | CASE NO.1:17CV1352 |
| Plaintiff, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| Vs. | ) ) | |
| CUYAHOGA METROPOLITAN HOUSING AUTHORITY | ) ) ) | OPINION AND ORDER |
| Defendant. | ) ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on revisitation of Defendant CMHA's Motion to Dismiss and supplemental filings. (ECF # 6). On June 26, 2017, Plaintiff Davis Winston filed his Complaint in this Court on behalf of himself and a putative class of tenants, alleging that Defendant Cuyahoga Metropolitan Housing Authority ("CMHA") violated their rights under 42 U.S.C. § 1437f(o) by failing to include in its subsidy for low-income tenants who participate in the Housing Choice Voucher Program ("HCVP"), month-to-month or short terms fees charged by some landlords.

According to Winston's Complaint, Section 8 of the United States Housing Act of

1937 enacted programs designed to promote the provision of decent and affordable housing for low-income individuals and families. 42 U.S.C. § 1437f(a). The United States Department of Housing and Urban Development ("HUD") provides funding and either directly administers the Section 8 programs or indirectly administers them through state or local Public Housing Agencies ("PHA's"). At issue in this case is a Section 8 program HCVP found in 42 U.S.C. § 1437f(o) and administered through the CMHA. The HCVP is a federally funded rent subsidy program for very low income families and individuals. Low income families or individuals lease private rental units and a PHA pays the landlord a portion of the contract rent. In this case, CMHA is the relevant PHA. PHA's determine who is eligible to participate in the HCVP. When a PHA determines an applicant may be a participant in the HCVP, the participant is responsible for finding an existing rental unit in the private market that meets the HCVP requirements and whose owner is willing to rent to an HCVP participant. An application for tenancy approval is submitted to the PHA, which then determines if the rent is reasonable and the housing quality is sufficient among other considerations. If the rental unit is approved, the PHA and the owner enter into a housing assistance payment contract ("HAP") wherein the PHA makes the rental housing assistance payments to the owner.

Parkside Gardens offers rental units to HCVP participants. It has a policy and practice allowing tenants to select a lease term. If a tenant selects a month-to-month lease term, Parkside requires the tenant pay rent and an additional month-to-month fee. If a tenant selects a one-year lease term, Parkside only requires a monthly rent and does not charge the additional month-to month fee. The rent for both the month-to-month lease term and one-

year lease term are the same. Parkside includes in its leases a term that if a tenant remains in a Parkside unit beyond the expiration of a lease term and no new lease has been executed, the tenant is subject to the month-to month fee.

On January 21, 2013, Winston entered into a HCVP lease at Parkside Gardens with an initial lease term of one year. The monthly rent was $541 and the lease contained an automatic renewal for a month-to-month term. After the expiration of the initial one-year lease term, Winston did not execute a new lease term and, per the terms of the automatic renewal provision, Winston's lease was renewed as a month-to-month lease. Winston remained on a month-to-month lease from February 2014 through October 2015. In addition to his rent payment of $541 per month, Winston was assessed for this time period an additional month-to-month fee of $100 per month.

According to Winston, CMHA does not treat the month-to-month fee or short-term fee as contract rent as the law requires and CMHA's failure to treat it as such caused Winston financial hardship.

CMHA filed a Motion to Dismiss, contending Winston's Complaint failed to state a claim upon which relief may be granted for three reasons: 1) the statute upon which Winston alleges a federal violation does not provide for a private right of action; 2) Winston never sought approval for the additional fees as required by the statute and regulatory scheme; and 3) Winston failed to allege he exhausted his administrative remedies.

In ruling on CMHA's Motion to Dismiss in this case and in a companion case entitled *Ray v. CMHA,* 17 CV 324, the Court raised *sua sponte* a question it found potentially dispositive of the issues raised. In a prior case before the Court captioned *Velez v. CMHA* 795

F.3d 578 (6th Cir. 2015), the Sixth Circuit, in reversing this Court, held that under §1437f(o), month-to-month fees are rent for purposes of the HCVP and remanded the case back to the Court for further adjudication. If this Court were to accept CMHA's argument that there exists no private right of action under § 1437f(o), then the Court must determine what effect, if any, the Sixth Circuit's opinion in *Velez* has on these proceedings. Is this Court bound by the Sixth Circuit decision in *TCG Detroit v. City of Dearborn,* 206 F.3d 618, 622 (6th Cir. 2000), (finding that where there was no implied private right of action the plaintiff would not have *constitutional* standing to sue and the federal court would lack subject-matter jurisdiction), or does the question of whether a private right of action exists implicate a failure to state a claim under Fed. R. Civ. P. 12(b)(6)? The Court asked the parties, "is it implicit in the Sixth Circuit's decision in *Velez*, that § 1437f(o) grants a private right of action since it held *Velez* could proceed on her § 1983 claim against CMHA?" The Court ordered supplemental briefing and set a hearing on the issue. That hearing was held on June 25, 2018 and the matter is ripe for ruling.

## LAW AND ANALYSIS

### Velez and Jurisdiction

#### Winston's Arguments

According to Winston, Sixth Circuit precedent holds that whether a claimant has a private cause of action is not a jurisdictional question but instead implicates Fed. R. Civ. P. 12(b)(6). Furthermore, Winston contends the existence of a private right of action under 1437f was actually litigated in *Velez* and the Sixth Circuit determined there was a private right of action in what amounts to a final determination on the merits. Also, Winston argues

4

that even if it were not litigated in *Velez*, CMHA had a full opportunity to litigate the issue and never raised it in *Velez*. Therefore, according to Winston, CMHA is precluded from raising it now under the doctrine of *res judicata*.

**CMHA's Arguments**

CMHA agrees with Winston that whether a federal statute confers a private right of action is not a jurisdictional question but rather implicates a Fed. R. Civ. P. Rule 12(b)(6) issue of failure to state a claim. In support, CMHA cites to *Cherokee Express, Inc. v. Cherokee Express Inc.*, 924 F.2d 603, 609 (6th Cir.1991), which held "the question of whether a complaint states a cause of action or claim for relief calls for a decision on the merits, not for a determination of jurisdiction." CMHA contends that no one raised the issue of whether a private right of action exists under 1437f in *Velez* and the issue was not determined by the Sixth Circuit, therefore, it is free to raise and the Court may address the issue in this case. Given the Sixth Circuit's prior precedent that 1437f creates no private right of action, CMHA argues that *Velez* could not have implicitly overturned prior Sixth Circuit precedent under the stare decisis doctrine.

The Court must first determine whether the existence of a private right of action is a jurisdictional question under Fed. R. Civ. P. 12(b)(1) or a 12(b)(6) failure to state a claim. When the Court posited this question to the parties, they agreed it was not jurisdictional but rather presents a 12(b)(6) issue. There is conflicting caselaw out of the Sixth Circuit with one case, *TCG Detroit v. City of Dearborn,* 206 F.3d 618, 622 (6th Cir. 2000), upholding dismissal for lack of jurisdiction, while another, *Cherokee Express, Inc., supra,* at 609 held it presents a Rule 12(b)(6) issue. ("Thus, we treated the question of whether the federal statute

5

created a private right of action as an element of the claim, not a question of subject matter jurisdiction."). This interpretation appears to be more closely in step with Supreme Court jurisprudence. See *Burks v. Lasker*, 441 U.S. 471, 476, 99 S. Ct. 1831, 1836, 60 L. Ed. 2d 404 (1979). (" The question whether a cause of action exists is not a question of jurisdiction, and therefore may be assumed without being decided."). See also *M.J. Whitman & Co. Inc. Pension Plan v. American Financial Enterprises, Inc.,* 725 F.2d 394, 396 n. 2 (6th Cir. 1984) ("If a statute does not authorize a private right of action, the court should dismiss for failure to state a claim upon which relief can be granted, not for lack of subject matter jurisdiction.") Thus, the Court agrees with the parties that whether a private right of action exists under a statute is not a jurisdictional question but presents a question of whether the Complaint states a claim upon which relief may be granted.

**Standard of Review**

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation. *Id.* at 555. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*. At 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* At 570. A claim

6

has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a Defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. See also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007)). That is, "*Iqbal* interpreted *Twombly* to require more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief." *Weisbarth*, 499 F.3d at 542. A complaint should be dismissed when it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Private Right of Action**

CMHA argues that Winston cannot bring a 42 U.S.C. § 1983 action for violations of Section 8 of the U.S. Housing Act of 1937 because the Act creates no private right of action. The Court begins its analysis by noting there is no direct Supreme Court or Sixth Circuit precedent on whether 1437f(o)(2) in particular grants tenants a private right of action. CMHA relies on the Sixth Circuit case of *Johnson v. Detroit*, 446 F.3d 614 (6th Cir. 2006),

7

wherein the Court affirmed a district court determination that the Housing Act at § 1437f did not create rights enforceable under § 1983. In *Johnson,* a Section 8 housing tenant brought an action against the City of Detroit and its Housing Commission for housing her in a dwelling that contained lead-based paints. Plaintiff asserted claims under the Lead-Based Paint Poisoning Prevention Act 42 U.S.C. § 4821-46 and the USHA 42 U.S.C. §1437 as well as regulations promulgated under those statutes. In ruling that these statutes provided no private right of action, the Sixth Circuit applied the Supreme Court's reasoning in *Gonzaga Univ v. Doe*, 536 U.S. 273 (2002), wherein the Supreme Court held private rights of action must be unambiguously conferred by Congress. The Supreme Court expressly rejected the notion that a private right of action exists where a plaintiff falls within the zone of interests a statute is intended to protect. The Supreme Court held, "it is rights, not the broader or vaguer benefits or interests that may be enforced under the authority of that Section." *Id* at 283. The Supreme Court in *Gonzaga* considered its prior jurisprudence in *Wright v. City of Roanoke Redevelopment and Housing Authority*, 479 U.S. 418 (1987) where, in a 5-4 decision, the Court held that the Housing Act at § 1437a conferred a private right of action under § 1983 for tenants in low cost housing projects who were overbilled for utilities in violation of the rent ceiling imposed by the Brooke Amendment to the Housing Act of 1937. The Court in *Gonzaga* recognized that *Wright* was still good law but was limited to the statutory provision before it.

*Wright* did not concern the HCVP at § 1437f but dealt with the rent ceiling in low income public housing in § 1437a. Thus, its holding, while informative, is not binding in this matter. Therefore, the Court must look to *Gonzaga* and its progeny in the Sixth Circuit for

8

guidance.

In *Gonzaga*, the Supreme Court held that when a court is confronted with the question whether a statute confers a private right of action, the court must consider whether Congress "intended to confer individual rights upon a class of beneficiaries." *Gonzaga,* 536 U.S. at 285. Where "a statute by its terms grants no private rights to any identifiable class," there is no private right of action. *Id* at 284. The Supreme Court concluded, "[i]n sum, if Congress wishes to create new rights enforceable under 1983, it must do so in clear and unambiguous terms..." *Id* at 290.

The Sixth Circuit in *Johnson,* a post-*Gonzaga* decision*,* considered § 1437 and § 1437f and found they conferred no private right of action. "Section 1437f (Section 8), which addresses low-income housing assistance, is likewise devoid of rights creating language." *Johnson*, 446 F.3d at 626. Primarily focusing on the statute's intent that PHA's maintain public housing quality standards and the requirements of the annual contributions contracts, the Court held that in light of *Gonzaga,* "the language of 1437f has an aggregate focus on the entity being regulated, thereby belying any intent to create rights enforceable by individual tenants." *Id* at 627.

This same reasoning is found in a subsequent Sixth Circuit opinion. In *Lewis v. Wheatley*, 528 Fed. Appx. 466 (6th Cir. 2013), the Sixth Circuit was again considering whether § 1437 granted a private right of action for a Section 8 housing tenant who asserted a claim for injury from the presence of mold and microbiological contaminants in the tenant's apartment. In affirming the district court's dismissal for lack of a private right of action, the Sixth Circuit held:

9

> Regarding the plaintiffs' claim pursuant to the USHA, we have noted that § 1437 "is merely a policy statement" and therefore does not provide a private right of action. *Howard v. Pierce,* 738 F.2d 722, 727 n. 9 (6th Cir.1984). More specifically, "[a]lthough residents of public housing undoubtedly 'benefit' from the statutory provisions at issue, the language of § 1437f has an aggregate focus on the entity being regulated, thereby belying any intent to create rights enforceable by individual tenants." *Johnson v. City of Detroit,* 446 F.3d 614, 627 (6th Cir.2006). Therefore, the USHA "does not give rise to an individual entitlement enforceable under § 1983." *Id.* "[B]ecause ... the relevant provisions of ... the USHA do not confer personal federal rights upon plaintiff[s] that are enforceable under § 1983, the federal regulations promulgated pursuant to these statutes are likewise incapable of independently conferring such rights." *Id.* at 629.

Acknowledging the binding precedent of *Johnson,* the Sixth Circuit concluded: "We are bound by our opinion in *Johnson* and therefore affirm the district court's dismissal of the plaintiffs' claims pursuant to § 1437 and its implementing regulations." *Lewis,* 528 F. App'x at 468.

Faced with this precedent, Winston argues that none of these cases dealt with the rent provisions of HCVP, the language of which more closely relates to the statutory language at issue in *Wright.* Also, the First Circuit in *Decambre v. Brookline Housing Authority*, 826 F.3d 1 (1st Cir. 2016), found that 1437f(o) does grant tenants a private right of action. There, the Court held that § 1437f(o)'s rent ceiling for federally subsidized housing gave tenant an enforceable right under § 1983 not to be required to put more than 30% of her adjusted income, however calculated, towards her rent.

It is against this backdrop that the parties ask the Court to determine whether § 1437f(o) confers a private right of action for Section 8 tenants to have their subsidy for rent include those fees charged by landlords for month-to-month or short-term leases. In *Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), the Supreme Court

10

established a three-part test to determine whether a statute creates a federal right: "1) Congress must have intended that the provision in question benefit the plaintiff; 2) plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence; and 3) the statute must unambiguously impose a binding obligation on the states." *Stevenson v. Willis,* 579 F. Supp. 2d 913, 921 (N.D. Ohio 2008), *citing Blessing, supra,* 520 U.S. at 340–41, 117 S.Ct. 1353.

The Court's analysis must begin with the language concerning the general purpose of of the HCVP, which reads at 1437f(o) in pertinent part:

(o) Voucher program

    (1) Authority

    (A) In general

    The Secretary may provide assistance to public housing agencies for tenant-based assistance using a payment standard established in accordance with subparagraph (B). The payment standard shall be used to determine the monthly assistance that may be paid for any family, as provided in paragraph (2).

42 U.S.C.A. § 1437f (West). This language indicates that its focus is upon the Secretary and the public housing agencies used to implement the Voucher Program and supports the Sixth Circuit's conclusion in *Johnson* that the aggregate focus of the act is the authority granted the Secretary to determine subsidy amounts using a defined payment standard. While tenants undeniably benefit from the Voucher Program, both the Sixth Circuit in *Johnson* and the Supreme Court in *Gonzaga* rejected the argument that merely because a person benefits from a law they have a private right to enforce it.

In Winston's Complaint, he alleges that § 1437f creates a private right of action at

Section (o)(2), wherein it reads:

> **(2) Amount of monthly assistance payment**
>
> Subject to the requirement under section 1437a(a)(3) of this title (relating to minimum rental amount), the monthly assistance payment for a family receiving assistance under this subsection shall be determined as follows:
>
> **(A) Tenant-based assistance; rent not exceeding payment standard**
>
> For a family receiving tenant-based assistance, if the rent for the family (including the amount allowed for tenant-paid utilities) does not exceed the applicable payment standard established under paragraph (1), the monthly assistance payment for the family shall be equal to the amount by which the rent (including the amount allowed for tenant-paid utilities) exceeds the greatest of the following amounts, rounded to the nearest dollar:
>
> **(i)** 30 percent of the monthly adjusted income of the family.
>
> **(ii)** 10 percent of the monthly income of the family.

1437f(o)(2) concerns the calculation to be used by the Secretary to determine the amount of assistance to be offered to Voucher Program participants. The Sixth Circuit precedent in *Johnson* and *Lewis* has stated in stark terms that 1437f does not create a private right of action. The Sixth Circuit in *Johnson* first examined the overall intent of the Housing Act at §1437 and held it was a "congressional policy declaration which does not confer an enforceable right under 1983." *Johnson,* 446 F.3d at 625. The Court expressly held "1437 is devoid of rights-creating language" but instead presents "broad policy statements regarding the federal government's goals in promoting decent and affordable housing." *Id.* at 626. The Court specifically considered the "remaining subsections" of 1437f, including those that "set forth in detail the specific requirements of the annual contributions contracts," finding that 1437f has an aggregate focus on the entity being regulated, thereby belying any intent to create rights enforceable by individual tenants." *Id* at 627.

In *Caswell v. City of Detroit Housing Commission,* 418 F.3d 616 (6th Cir. 2005), a case predating *Johnson,* the Sixth Circuit left open the possibility that 1437f(o) did confer a private right of action. The Court considered whether a former housing subsidy recipient could bring a claim under §1983 against the defendant Housing Commission for improper denial of housing subsidies under the Voucher Program. In concluding that there was no private right of action under 1437f(o) to require a local housing commission to continue to pay subsidies until a final eviction notice, the Sixth Circuit held that "even if 1437f(o)(2) could be viewed as being phrased in terms of the persons 'benefitted,' that is beside the point in our case. Section 1437f(o)(2) establishes the amount of monthly assistance that a tenant should receive if he is a participant of the program." Because the amount of rental assistance was not at issue in *Caswell*, the Sixth Circuit did not address it. However, *Caswell* predated *Johnson*, wherein the Sixth Circuit closed the door on a private right of action under 1437f. Moreover, in *Johnson*, the Sixth Circuit reviewed the subsections of 1437f and determined that 1437f "is likewise devoid of rights-creating language." *Johnson*, 446 F.3d at 626. While Winston alleges that a private right of action may be found in 1437f and its regulations in 24 C.F.R. § 982.501-521, the Sixth Circuit in *Johnson* further held that administrative regulations alone cannot create a right enforceable under § 1983. *Johnson* 446 F.3d at 629. Furthermore, the regulations themselves expressly disclaim any private rights under the HCVP insofar as a tenant seeks to enforce some provision of a HAP contract. 24 CFR 982.456 reads: The HAP contract shall not be construed as creating any right of the family or other third party (other than HUD) to enforce any provision of the HAP contract, or to assert any claim against HUD, the PHA or the owner under the HAP contract."

Winston cites to the First Circuit in *Decambre*, wherein the Court considered whether 1437f(o) confers a private right of action in beneficiaries. The First Circuit in *Decambre* held "we hold that Section 8's rent ceiling provision confers a right that is presumptively enforceable under Section 1983." In so holding, the Fifth Circuit, in reliance on *Wright* considered the language of 1437a, the statute at issue in *Wright,* which reads: "Except as provided in paragraph (2) and subject to the requirement under paragraph (3), a **family shall pay as rent** for a dwelling unit assisted under this chapter (other than a family assisted under section 1437f(o) or (y) of this title or paying rent under section 1437f(c)(3)(B)1 of this title) the highest of the following amounts..." 42 U.S.C.A. § 1437a. It was this obligation on the family imposed by 1437a that the Supreme Court found undeniably created a private right of action. The Fifth Circuit then compared 1437a and 1437f(o)'s rent ceiling provisions and found them analogous so as to create a private right of action. While *Decambre* is instructive, it is not binding on the Court and is distinguishable because the finding applied to the rent ceiling provision which is not at issue in this case. Instead, Winston contends CMHA violated his rights "by failing to include their month-to-month fees and/or short term fees as a part of the contract rent under the HCVP." No court has found a private right of action under this theory of liability. In fact, courts that have considered Section 8 of 1437 have almost unanimously held there is no private right of action. See *Gladney v. Sureluck Homes, LLC.,* No. 1:13CV462, 2013 WL 2182797 *3 (W.D. Mich. May 20, 2013) (collecting cases).

Winston contends 1437a and 1437f are sufficiently similar such that a finding of a private right of action under 1437a requires a finding of a private right of action under 1437f. Certainly the Fifth Circuit agreed with Winston. CMHA draws several distinctions between

14

the statutes that the Court will consider.

According to CMHA, 1437a addresses the rights of tenants in public housing units in the amount of payments in rent. The language used in 1437a uses the phrase "shall pay as rent" as follows:

> Except as provided in paragraph (2) and subject to the requirement under paragraph (3), a **family shall pay as rent** for a dwelling unit assisted under this chapter *(other than a family assisted undersection 1437f(o) or (y) of this title* or paying rent under section 1437f(c)(3)(B)1 of this title) the highest of the following amounts, rounded to the nearest dollar:
>
> **(A)** 30 per centum of the family's monthly adjusted income;
>
> **(B)** 10 per centum of the family's monthly income; or
>
> **(C)** if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payments which is so designated.
>
> (2) Rental payments for public housing families
>
> (A) Authority for family to select
>
> (i) In general
>
> A family residing in a public housing dwelling **shall pay as monthly rent** for the unit the amount determined under clause (i) or (ii) of subparagraph (B), subject to the requirement under paragraph (3) (relating to minimum rents).

Compare the above to Section 1437f(o) which reads:

(A) Tenant-based assistance; rent not exceeding payment standard

> For a family receiving tenant-based assistance, if the rent for the family (including the amount allowed for tenant-paid utilities) does not exceed the applicable payment standard established under paragraph (1), the **monthly assistance payment for the family shall be equal to the amount by which the rent** (including the amount allowed for tenant-paid utilities) exceeds the greatest of the following amounts, rounded to the nearest dollar:
>
> (i) 30 percent of the monthly adjusted income of the family.

15

> > (ii) 10 percent of the monthly income of the family.
> > (iii) If the family is receiving payments for welfare assistance from a public agency and a part of those payments, adjusted in accordance with the actual housing costs of the family, is specifically designated by that agency to meet the housing costs of the family, the portion of those payments that is so designated.
>
> (B) Tenant-based assistance; rent exceeding payment standard
>
> > For a family receiving tenant-based assistance, if the rent for the family (including the amount allowed for tenant-paid utilities) exceeds the applicable payment standard established under paragraph (1), **the monthly assistance payment for the family shall be equal to the amount by which the applicable payment standard exceeds the greatest of amounts under clauses (i), (ii), and (iii) of subparagraph (A).**
>
> **(C) Families receiving project-based assistance**
>
> > For a family receiving project-based assistance, the rent that the family is required to pay shall be determined in accordance with section 1437a(a)(1) of this title, and the amount of the housing assistance payment shall be determined in accordance with subsection (c)(3) of this section.

CMHA contends that whereas 1437a is directed to the renter in determining how much they must pay, 1437f is directed to how much the Secretary must pay. Because the focus of the HCVP at 1437f is on the formula the Secretary must apply to determine the amount of assistance to provide rather than the amount the family must pay, CMHA argues the aggregate focus of the HCVP is on the obligations imposed on the Secretary and does not confer any rights in the tenant. Furthermore, CMHA points out that Voucher Program participants are expressly excluded from the requirements of 1437a, demonstrating Congress's intent that no private right of action be conferred on Voucher Program participants.

Winston contends that rights exist where the statute at issue is phrased in terms of the

16

person benefitted.  Furthermore, 1437f explicitly confers specific monetary entitlements upon tenants and there is no sufficient administrative means of enforcing the requirements against a housing authority.

CMHA disagrees, contending it is rights, not benefits, that are enforceable under §1983 and there is an administrative mechanism for enforcement under 1437f found in 24 CFR 982.555.

This issue is certainly a close call and is made all the more difficult by the Court's own history in *Velez*, wherein the Sixth Circuit reversed this Court's holding that month-to-month fees were not rent under the same Voucher Program section before the Court in this case.  The parties dispute whether the issue of a private right of action was ever presented to the Sixth Circuit at the *Velez* appeal.  Winston cites the Court to its Appellant Brief at pgs. 42-44 wherein the Appellant tenant argued they were permitted to bring their claims under 1983 in light of the authority of *Wright*, *Johnson v. Housing Authority of Jefferson Parish* 442 F.3d 356 (5th Cir. 2006) and *Gonzaga*.  While these cases all concern whether a private right of action exists under the FHA, Appellant's brief contained no development of the argument and merely asserts the right to bring the action under the above authority.  The *Velez* opinion is silent as to whether1437f confers a private right of action, but Winston attaches the oral argument transcript from the *Velez* appeal wherein a panel member appears to question Velez's counsel on whether a private right of action exists.   CMHA argues that the issue was never presented by CMHA and was never argued in the District Court.

The evidence before the Court indicates that the issue was never directly presented to the Sixth Circuit, was not an issue on appeal, and was never discussed in the Sixth Circuit's

opinion in *Velez*. As such, the *Velez* decision has no precedential effect on the issue before the Court. Winston argues that CMHA could have and did not present this issue in *Velez* and are now barred by the doctrine of *res judicata* from raising the issue here. The Court disagrees. First, defendants in *Velez* asserted the affirmative defense of Failure to State a Claim in their Amended Answer. The issues were never presented on appeal and the case resolved before trial. Therefore, defendants were not foreclosed from raising the issue should *Velez* have gone to trial and are not barred from asserting the issue now.

There is no doubt that Winston is a beneficiary of 1437f(o). But this is simply not enough to find a statute confers a private right of action. The aggregate focus of 1437f(o) is on the Secretary. The Supreme Court in *Alexander v. Sandoval*, 532 U.S. 275, 289, 121 S. Ct. 1511, 1521, 149 L. Ed. 2d 517 (2001) held that "statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" quoting *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981). There is no unambiguous, rights creating language in 1437f as its focus is on the responsibilities and duties of the Secretary. Thus, the Court does not find that the statutory language of 1437f unambiguously outlines Congressional intent to confer on a tenant a private right of action.

Even if the Court believed that it does set forth a private right of action, the Court would still need to determine whether it is constrained by the *Johnson* and *Lewis* opinions as a broad prohibition against finding a private right of action under 1437f. Having considered all the above and the strong arguments on both sides of this issue, the Court holds it is constrained by the Sixth Circuit's decision in *Johnson*. In *Johnson*, the Sixth Circuit

expressly held the 1437f "is likewise devoid of rights-creating language." *Id* at 626. After considering 1437f(b) and "the remaining extensive subsections of this statute," the Sixth Circuit concluded, "the language of 1437f has an aggregate focus on the entity being regulated thereby belying any intent to create rights enforceable by individual tenants." *Id* at 627. Although 1437f(o) was not before the Sixth Circuit in *Johnson*, its consideration of the "remaining subsections," which included 1437f(o), is not mere dicta because a private right of action analysis requires the reviewing court to consider the "aggregate focus" of the statute and not just a subsection in isolation per *Gonzaga* and *Johnson*. Because the Sixth Circuit considered 1437f and its subsections and found they did not create any rights enforceable by individual tenants, this Court is constrained by the Sixth Circuit's binding precedent, just as the Sixth Circuit itself found itself constrained by *Johnson* in the *Lewis* opinion. That precedent, therefore, precludes the lawsuit before the Court. Should an exception be found under the statute it must come from the Sixth Circuit, as only that Court has the authority to carve out such an exception in light of the holding in *Johnson*.

Therefore, because the Sixth Circuit in *Johnson* found no private right of action exists under 1437f the Court grants CMHA's Motion and dismisses Winston's claims.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated: November 29, 2018